**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **MOTION TO SUPPRESS EVIDENCE** |
| vs. | ) | |
| | ) | Case No. 4:09-cr-084 |
| Ray Leon Huether, | ) | |
| | ) | |
| Defendant. | ) | |

___

Before the Court is the Defendant's Motion to Suppress Evidence filed on December 2, 2010. See Docket No. 32. The Government filed a response in opposition to the motion on December 14, 2010. See Docket No. 36. The Court denies the motion for the reasons set forth below.

**I.   BACKGROUND**

On October 28, 2009, the Defendant Ray Leon Huether was indicted on two counts, receipt of materials involving the sexual exploitation of minors and possession of material involving the sexual exploitation of minors. See Docket No. 2.

In June 2008 the Minot Police Department began to investigate allegations of sexual abuse committed by Huether against his girlfriend's daughter. During the investigation, Sergeant David Goodman of the Minot Police Department learned that Huether may be in possession of child pornography and that he had moved from Minot to Fargo. On August 8, 2008, six law enforcement officers, including Goodman and officials from the Fargo Police Department and the North Dakota Bureau of Criminal Investigation ("BCI"), executed a search warrant at the home Huether shared with Helen Zeng-Bjornstad. Zeng-Bjornstad let the officers into the house and Goodman followed her to the bedroom where Huether was located. Goodman told Huether why the officers were there,

that he was not under arrest, and that he was not in custody. Huether and Zeng-Bjornstad then gave their consent to the officers to search their house, garage, vehicles, computers, and computer storage. See Docket No. 36-2.

Goodman asked Huether if he would answer some questions, and again told him he was not under arrest and not in custody. According to his written report, Goodman also told Huether he was free to leave. See Docket No. 36-1. Goodman began to ask Huether about the allegations of sexual abuse. Investigator Paula Ternes of the Fargo Police Department entered the room at which time Goodman began recording the interview. At the beginning of the recorded portion of the interview, the following exchange took place between Goodman and Huether:

> Q    Ok. When I first started talking to you today at roughly 7:45 AM, I informed you that you're not in custody, you're not under arrest. Is that correct?
>
> A    Uh yes.
>
> Q    And you understand that?
>
> A    Yes.

See Docket No. 36-3, p. 1.

After the interview and search were concluded, Goodman discussed with another officer from the Minot Police Department whether to arrest Huether. Huether was subsequently arrested. Huether was not given Miranda warnings prior to, or at any point during, his interview with Goodman and Ternes. Huether was not put in handcuffs until he was placed under arrest.

In testimony before the Northwest Judicial District Court in Ward County, North Dakota,[1] Huether testified that he did not remember being told he was free to leave. See Docket No. 38, p. 62. Huether also testified that he did not feel free to leave while being interviewed by Goodman:

> He was in front of me, he was fully set up in what, bulletproof vest and armed. He has several people in the house. I wasn't able to use the bathroom facilities. I wasn't able to get anything to drink or anything like that. Any time that I might have gotten up he would say just to sit here and we have some more questions.

See Docket No. 38, p. 62. Goodman testified that Huether was free to leave at any point during the interview:

> Q  Hypothetically, if Mr. Huether would have actually just left, would have started packing his bags while you were conducting the search, would he have been free to go?
>
> A  Yes.
>
> Q  You don't think that you had probable cause to arrest him prior to his statement being made?
>
> A  At that point I feel we did have some relating to the child pornography that we had found. But he was free to leave and if he would have said, well I'm leaving, then I would have let him leave.

See Docket No. 38, p. 27.

Huether also testified that Goodman told him prior to the interview, "If you play hard ball with us we will play hard ball with you." See Docket No. 38, p. 63. Goodman testified:

> Q  At some point did you indicate to him that his level of cooperation would affect how the police would handle this matter, did you give him an indication along those lines?
>
> A  I may have. I don't know for sure if I did, but I may have said that.

---

[1] Huether was convicted in state court of gross sexual imposition. State v. Huether, Case No. 51-8-K-1719. On December 2, 2010, the North Dakota Supreme Court upheld the conviction. State v. Huether, 2010 ND 233. The conviction is the subject of a pending motion in limine. See Docket No. 39.

See Docket No. 38, pp. 25-26.

At his state court trial, Huether testified in more detail about Goodman's appearance:

> Well, he had on the street clothes with the bulletproof vest. Had his hand – I don't recall whether he had the weapon drawn or not. But he had his hand over it. So I don't know if he had just holstered it or if he had it ready to remove, or how that had taken place. I had just been woken up so I didn't see what, how he had the weapon positioned or anything like that. But I saw him enter the room and he was in a low, crouched position as if he was looking for weapons. And after he determined that I didn't have a weapon he asked me to get up and get dressed so he could question me.

See Docket No. 37-1, p. 26. Huether also testified that Goodman was blocking the bedroom door, the room's only exit, during the interview. See Docket No. 37-1, p. 29.

On December 2, 2010, Huether filed a motion to "suppress all statements obtained from the defendant as a result of the interrogation on August 8, 2008, because they were obtained in violation of his Miranda Rights." See Docket No. 32. Huether contends he was in custody during the interview with Goodman and Ternes and he was not advised of his Miranda rights. The Government contends the statements should not be suppressed because Huether was not in custody until he was arrested after the interview and the search was concluded.

## II.   LEGAL DISCUSSION

Huether contends that the statements made to Goodman and Ternes on August 8, 2008 were in violation of his Fifth Amendment rights. It is well-established that law enforcement officers must administer Miranda warnings whenever a suspect is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." Miranda v. Arizona, 384 U.S. 436, 478-479 (1966). A person is in custody when he is either formally arrested or his freedom of movement is constrained to a degree equivalent with formal arrest. United States

4

v. Brave Heart, 397 F.3d 1035, 1038 (8th Cir. 2005). The Miranda custody test is an objective test; two discrete inquiries are essential: (1) the circumstances surrounding the interrogation, and (2) given those circumstances, whether a reasonable person would have felt free to terminate the interrogation and leave. Yarborough v. Alvarado, 541 U.S. 652, 663 (2004) (citing Thompson v. Keohane, 516 U.S. 99, 133 (1995)). In Berkemer v. McCarty, 468 U.S. 420, 442 (1984), the Supreme Court affirmed that an objective test is preferable to a subjective test because under the objective analysis the police do not have the burden of anticipating the frailties or idiosyncrasies of every person whom they question.

It is well-established in the Eighth Circuit that the totality of the circumstances must be looked at and that six common indicia of custody are to be considered in determining whether an individual was held in custody: (1) whether the suspect was informed during the interview that the questioning was voluntary, that he could ask the officers to leave, or that he was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect voluntarily acquiesced to official questioning or initiated contact with authorities; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether there was a police-dominated atmosphere; and (6) whether the suspect was placed under arrest at the termination of the questioning. United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990). "The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of questioning. Conversely, the last three indicia are aggravating factors which, if present, aggravate the existence of custody." United States v. Axsom, 289 F.3d 496, 500-01 (8th Cir. 2002).

The Eighth Circuit does not require that the Griffin factors be followed ritualistically in every case. United States v. Czichray, 378 F.3d 822, 827 (8th Cir. 2004). "When the factors are invoked, it is important to recall that they are not by any means exclusive, and that 'custody' cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." Id. The most obvious way to demonstrate that a person is not in custody is to tell him that he is not in custody and that he may terminate the questioning at any time. Czichray, 378 F.3d at 826; Brave Heart, 397 F.3d at 1039. The Court will use the Griffin factors as a framework for analysis and discuss each one in turn.

### A. WHETHER THE SUSPECT WAS INFORMED DURING THE INTERVIEW THAT THE QUESTIONING WAS VOLUNTARY, THAT HE COULD ASK THE OFFICERS TO LEAVE, OR THAT HE WAS NOT CONSIDERED UNDER ARREST

Huether acknowledges that Goodman told him twice that he was not in custody and that he was not under arrest. Goodman's written report indicates that he told Huether he was free to leave. See Docket No. 36-1. Huether testified, "I do not ever remember him saying that." See Docket No. 38, p. 62. Whether Goodman used the phrase "free to leave" is of little matter when Huether acknowledges that he was told twice that he was not under arrest and not in custody. The Court finds that the first mitigating factor exists.

### B. WHETHER THE SUSPECT POSSESSED UNRESTRAINED FREEDOM OF MOVEMENT DURING QUESTIONING

In Axsom, federal agents executed a search warrant and interviewed the defendant in his home regarding his possession of child pornography. Axsom, 289 F.3d at 498. When the agents

arrived, the defendant answered the door wearing only a towel. Before he was interviewed, agents escorted him to the bedroom to dress. During the interview, when the defendant stood up to get a drink, an agent said, "hold on a minute" and had another agent bring a drink to him. Id. Later, an agent escorted the defendant to the bathroom. The Eighth Circuit Court of Appeals concluded, "Because [the defendant] was not permitted to move about at will during the interview, we cannot say the district court erred in finding that the second mitigating factor was absent." Id. at 501.

Huether testified that Goodman was blocking the bedroom door during the interview and that when he asked permission to use the restroom, "They said, we just have some more questions." See Docket No. 38, p. 67. He also testified that "Det. Goodman appeared to be controlling where I could go." See Docket No. 38, p. 66. The record reveals that Huether was not permitted to move about at will during the interview. The Court finds that the second mitigating factor is absent.

### C. WHETHER THE SUSPECT VOLUNTARILY ACQUIESCED TO OFFICIAL QUESTIONING OR INITIATED CONTACT WITH AUTHORITIES

The Eighth Circuit Court of Appeals observed in Czichray:

Whatever the Griffin court meant by "acquiescence," cf. Webster's Third New International Dictionary 18 (2002) ("passive assent or submission"); 1 Shorter Oxford English Dictionary 20 (5th ed. 2002) ("Silent or passive assent to, or compliance with, measures or proposals"), we conclude that the initiation of questioning by [law enforcement] in this case is not significant evidence of restraint on [the Defendant's] freedom of movement. Against a backdrop of repeated advice that he was free to terminate the interview, [the Defendant's] decision not to terminate the interview and to allow the interview to proceed to its closing suggests an exercise of free will, rather than restraint to a degree associated with formal arrest. Cf. [Yarborough v. Alvarado, 541 U.S. 652, 655-59, 663-66 (2004)] (where police initiated two-hour interview of suspect in police station, did not tell suspect he was free to leave, and engaged in "pretty friendly conversation" during interview, state court was clearly "reasonable" in concluding that suspect was not in custody). This is not a case where a suspect sought to exercise his option of terminating the interview, only to meet resistance from his interrogators.

Czichray, 378 F.3d at 828-29. Law enforcement officers initiated contact with Huether, but he voluntarily allowed the interview with Goodman and Ternes to proceed to its closing. At no time did Huether refuse to answer questions or ask to leave, even though he had been told he was not in custody and was free to leave. The Court finds that the third mitigating factor is present.

### D. WHETHER STRONG ARM TACTICS OR DECEPTIVE STRATEGEMS WERE EMPLOYED DURING QUESTIONING

Huether testified that Goodman told him, "If you play hard ball with us we will play hard ball with you." See Docket No. 38, p. 63. Goodman testified that he "may have" indicated to Huether that his level of cooperation would affect how the matter would be handled. See Docket No. 38, p. 26. Considering Goodman told Huether he was not in custody and that he was free to leave, the Court finds that even if Goodman did tell Huether, "If you play hard ball with us we will play hard ball with you," such a statement would not be enough to turn an interview in Huether's bedroom into a custodial situation involving strong arm tactics. The Court finds the first aggravating factor is absent.

### E. WHETHER THERE WAS A POLICE-DOMINATED ATMOSPHERE

Goodman and Ternes interviewed Huether in the bedroom he sometimes shared with Zeng-Bjornstad. The Eighth Circuit Court of Appeals has explained:

> When a person is questioned "on his own turf," United States v. Rorex, 737 F.2d 753, 756 (8th Cir. 1984), we have observed repeatedly that the surroundings are "not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation." United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985); see also United States v. Wolk, 337 F.3d 997, 1007 (8th Cir. 2003); Axsom, 289 F.3d at 502; United States v. Sutera, 933 F.2d 641, 647 (8th Cir. 1991). Even our court's one brief suggestion to the contrary, see Griffin, 922 F.2d at 1355 n.15,

> also cited <u>Miranda</u> itself for the "accepted logic" that "an interrogation in familiar surroundings such as one's home softens the hard aspects of police interrogation and moderates a suspect's sense of being held in custody."

<u>Czichray</u>, 378 F.3d at 826-27. In addition, the interview lasted approximately ninety minutes. In <u>United States v. Galceran</u>, 301 F.3d 927 (8th Cir. 2002), a ninety-eight minute interview in a police station did "not indicate police domination." <u>Galceran</u>, 301 F.3d at 930-31. The Court finds that a ninety minute interview in Huether's home was not police dominated, and that the second aggravating factor is not present.

### F.   WHETHER THE SUSPECT WAS PLACED UNDER ARREST AT THE TERMINATION OF THE QUESTIONING

Huether was not placed under arrest immediately after the interview with Goodman and Ternes, but he was arrested after the search of his home was concluded. BCI Agent Ronald Stanley testified during the state court proceedings that he assisted in executing the search warrant at Huether's home, and that his understanding was that Huether was going to be arrested. <u>See</u> Docket No. 38, p. 41. He also testified that if Goodman had decided not to arrest Huether that he would honor that decision. <u>See</u> Docket No. 38, p. 45. The Court finds that the officers went to Huether's residence with the intention of arresting Huether, and that he was arrested after he was interviewed and his home was searched. The Court finds that the third aggravating factor is present.

### III.   CONCLUSION

In considering all of the circumstances surrounding the interrogation, the Court finds that a reasonable person in Huether's position would have felt free to terminate the interrogation and leave. More important, Sergeant Goodman told Huether that he was not in custody and not under arrest,

9

and that he was free to leave.  In addition, the interview took place in Huether's home, a setting "not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation."  Czichray, 378 F.3d at 826 (quoting Helmel, 769 F.2d at 1320).  Huether was not placed in handcuffs or physically restrained until he was arrested.  Additionally, the Court notes that on December 2, 2010, the North Dakota Supreme Court upheld the state district court's order denying Huether's motion to suppress incriminating statements Huether made to Goodman during the same interview that is the subject of this motion.  Huether, 2010 ND 233, ¶ 15.  Accordingly, Huether's Motion to Suppress Evidence (Docket No. 32) is **DENIED**.

    **IT IS SO ORDERED**.

    Dated this 6th day of January, 2011.

                                      */s/ Daniel L. Hovland*
                                      Daniel L. Hovland, District Judge
                                      United States District Court